IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
JOHN G. SIMMERMON, III & A.   :
SIMMERMON CORPORATION,        :
                              :          Civil Action
            Plaintiffs,       :    No. 09-5880 (JBS/KMW)
                              :
      v.                      :
                              :           OPINION
MICHAEL GABBIANELLI, ET AL.,  :
                              :
            Defendants.       :
_____:
```

APPEARANCES:
Michael S. Fettner, Esq.
Michael T. Sweeney, Esq.
Peter E. Kidd, Esq.
LYMAN & ASH, ESQS.
1612 Latimer Street
Philadelphia, PA 19103
     Counsel for Plaintiffs

Allan E. Richardson, Esq.
Charles B. Austermuhl, Esq.
RICHARDSON & GALELLA
142 Emerson Street
SUITE B
Woodbury, NJ 08096
     -and-
George J. Botcheos, Jr., Esq.
GEORGE J. BOTCHEOS, CHARTERED
436 Commerce Lane
Suite A
West Berlin, NJ 08091
     Counsel for Defendants

**SIMANDLE**, Chief Judge:

# I.    INTRODUCTION

This case is about Monroe Township officials' allegedly retaliatory and discriminatory enforcement of zoning and towing laws against Plaintiffs John G. Simmermon, III and his towing

company, A. Simmermon Corporation, doing business as A-Jacks Towing.  Plaintiffs contend that Defendants' actions were in retaliation for Simmermon's advocacy at Township Council hearings and discriminatory because similarly-situated companies were treated more leniently.  Plaintiffs also contend that the zoning enforcement actions were taken without due process of law. Plaintiffs are suing eight township officials and Monroe Township itself.[1]  The matter is before the Court on Defendants' motion for summary judgment as to all claims.  [Docket Item 27.]

## II.   BACKGROUND

Since 1971, Monroe Township in Gloucester County has maintained a list of tow truck operators who are called by the Township Police for towing service.  Pls.' Ex. 1 (Monroe Code § 262).  By the terms of the ordinance, the tow list is compiled each year, and the Township rotates the go-to provider on a weekly basis.  § 262-3.  This case concerns an amendment to the ordinance requiring all towers on the list to be in compliance with zoning laws, a series of zoning enforcement actions taken against Plaintiffs, and the exclusion of A-Jacks Towing from the tow list for the period from December 11, 2007 through December 4, 2008 based on the amendment to the ordinance.

---

[1]  The individual defendants are:  Michael Gabbianelli, who was the Mayor of the Township at the time; Frank Caligiuri, Walter Bryson, Marvin Dilks, and Bill Julio, William Sebastian, and Dan Teefy, members of the Township Council at the time; and Michael DePalma, a construction official for the Township.

### A.   June 2007 Towing Amendment

Prior to the events of late 2007, A-Jacks not only had a slot on the tow list, but two other companies on the list, Bill's Auto and Hogbin's Towing, contracted with A-Jacks to employ A-Jacks on their behalf when those companies were nominally on call.  In early 2006, Lt. Anthony Pace of the Township Police brought the issue of A-Jacks contracting with these two companies to the Township Solicitor out of confusion over the arrangement and concern that Bill's and Hogbin's were not eligible for the tow list.  Pls.' Ex. 11 (Pace Letter); Pls.' Ex. 12 at 5 (April 4, 2007 Council Minutes).  The Solicitor raised the matter with the Township Council.

The Council held a series of meetings and hearings over the subsequent months on this and related towing issues, folding the question about A-Jacks into a general review of the towing ordinance.  At these meetings, Simmermon and his then-attorney, John E. Luby, defended the substitution practice based on A-Jacks' superior capabilities, and raised other issues with the towing ordinance.  Simmermon proposed several changes to the towing ordinance aimed at requiring higher standards of towers, such as a requirement that eligible companies be able to tow more than one vehicle at once; this requirement would have excluded some companies that had only one small tow truck.  Pls.' Ex. 12 at 3 (April 4, 2007 Council Minutes).

Ultimately, on June 26, 2007, the Council approved an amendment to the towing ordinance to prevent the kind of arrangement A-Jacks had with Bill's and Hogbin's, but also to adopt many of Simmermon's recommendations, ensuring that each tower maintained a motor vehicle repair facility with various features deemed to be important by the Council, such as secure fencing. Pls.' Ex. 20 (Council minutes). Four months later, the Council also made a late addition to the amendments. At the second reading of the amended ordinance in October 2007, a final sentence was added requiring tow companies to have "all local, county, and state approvals." Pls.' Ex. 28 (Council minutes). This new requirement, § 262-14G, is at the center of the conflict addressed in this Complaint, because it was ultimately the basis upon which the Council excluded A-Jacks from the tow list.[2]

**B.  The Pole Barn and Plaintiffs' Zoning Issues**

The requirement that tow companies have "all local, county, and state approvals" presented a problem for Plaintiffs. As it turns out, since 2002, A-Jacks had been operating out of a pole

---

[2]  The full text of the provision amended in October 2007 is: "Any wrecker who shall be required to maintain a motor vehicle repair facility under this chapter and section shall not be permitted to lease said facility or share said site with another wrecker either on or off the list.  The motor vehicle repair facility must be a permitted use at the location utilized. In addition to being a permitted use, said facility must have all local, county and state approvals."  § 262-14G.

barn constructed for Simmermon's personal use without zoning approval for the commercial activity.  Having received a notice of violation in 2002 regarding the barn that notified Simmermon that he was working without permits and occupying the barn without a certificate of occupancy, he applied for and was granted a use variance subject to Simmermon's satisfaction of certain conditions.  Defs.' Ex. I (Nov. 22, 2002 Violation); Defs.' Ex. E (application for variance); Defs.' Ex. L (granting variance with conditions).  The Zoning Code Enforcement Officer, Fred Weikel, allowed A-Jacks to continue operating as Simmermon worked toward completing the conditions necessary for the variance.  Weikel Dep. at 92-93.

Nearly five years later, though one month after the addition to the towing ordinance of a requirement for zoning approval and three weeks before the tow list was due to be finalized, the township instituted a series of severe zoning enforcement actions against Simmermon because Simmermon had still not met the conditions required by the Zoning Board.[3]  Though not explained in the record, it appears that Monroe Township has both a Construction Official and a Zoning Officer who share jurisdiction

---

[3]  In January 2006, The Monroe Township Zoning Office sent Luby a list of four outstanding items in connection with the use variance application: a deed of consolidation, a contribution to the Township for sidewalks, written procedures in case of an oil or gasoline spill, and approval of the Gloucester County Planning board. Defs.' Ex. O.

over enforcement of zoning and construction permits.
Construction Officer Michael DePalma wrote Simmermon to inform
him that that he was still in violation of the 2002 notice
regarding permits and certificate of occupancy, and ordering him
to obtain and comply with all necessary county and local
requirements.  Defs.' Ex. Q (DePalma Nov. 20, 2007 Letter).  Six
days later, DePalma issued a notice and order of a $2,000 penalty
plus a threatened fine of $2,000 per week after December 10, 2007
so long as Simmermon continued to occupy and operate his business
out of the pole barn without the proper certificates, and charged
him with making a false or misleading written statement in
connection with his variance application.  Defs.' Ex. S (Nov. 26,
2007 notice).  Two days after that, DePalma issued a notice of
unsafe structure, ordering Simmermon to vacate his structure by
December 13, 2007 because of the failure to obtain proper permits
and certificates.  Defs' Ex. T (Nov. 28, 2007 notice).

     Shortly thereafter, on December 11, 2007, the Council met to
compile the 2008 tow list.  During the closed session, the
Council voted unanimously to exclude A-Jacks from the 2008
rotation list, included 8 wreckers on the list, and gave A-Jacks
and Monroe Collision (also excluded) two weeks to comply with the
ordinance.  Teefy Dep. at 63-64; Pls.' Ex. 42 at 5.  Despite the
fact that Simmermon's challenge to the Township's notices was
pending with the Construction Board of Appeals, Pls.' Ex. 39

6

(Dec. 5, 2007 petition), on December 13, four police officers and Officer DePalma arrived at A-Jacks posted a notice declaring the building unsafe for human occupancy.

Simmermon successfully challenged the shutting down of the barn as unsafe in Superior Court, and A-Jacks resumed business soon after the Christmas 2007 holidays. Simmermon Decl. ¶ 16. The Construction Board of Appeals affirmed the existence of the zoning violations, but rejected the claim that Simmermon had falsified information on his application for a use variance. Defs.' Ex. U (decision of construction board). After completing the outstanding conditions for Simmermon's use variance in the Spring and Fall of 2008, on December 4, 2008, Council approved A-Jacks for the 2009 rotation list. Defs.' Exs. X-Z.

### C.  Dispute Over Motivations

The principal dispute of fact in this case centers on Plaintiffs' assertion that Defendants' conduct was selective, and unconstitutionally motivated by animus toward Simmermon. In particular, Plaintiffs see retaliation in the decision to suddenly enforce the zoning rules in the days prior to the tow list hearing and the decision to refuse to grant leniency on application of the tow list requirement of "all local, county, and state approvals," while granting leniency as to other new requirements to other companies.

Plaintiffs contend that Simmermon's advocacy of higher standards at the City Council meetings preceding the June 2007 amendment, along with his company's dominant position, led to hostility toward him from the Mayor, Michael Gabbianelli, because of Gabbianelli's relationships with the other tow companies. Gabbianelli knew the owners of most of the companies, some for decades, and considers them friends. Gabbianelli also had a direct financial interest in one of the companies, B&H Auto, to whom he leased land. Gabbianelli Dep. at 39-40. Simmermon also maintains that Councilman Julio was hostile toward him because Julio disliked Simmermon's attorney, Mr. Luby, and that Councilman Caligiuri revealed hostility toward Simmermon when he became upset over what Simmermon contends was merely a misunderstanding. Plaintiffs point to the undisputed fact that other companies were exempted from the towing ordinance requirements, the Mayor's connections to the other towers in light of his advocacy at the Council hearings, and Councilman Julio and Caligiouri's alleged hostility, all as evidence that A-Jacks was unfairly singled out because of Simmermon's advocacy for higher standards.

Defendants claim that the cause of the renewed interest in Simmermon's zoning compliance was efforts by Eleanor Gill, one of the proprietors of Midway Auto. The day before DePalma began his enforcement actions, on November 19, 2007, Gill mailed a letter

8

to Gabbianelli and DePalma, referring to earlier conversations
with the two, complaining about A-Jacks ongoing zoning violations
and the fact that A-Jacks was permitted to operate despite its
lack of proper permits and certifications.  Defs.' Ex. FF (Nov.
19, 2007 Gill Letter).  She urged that "Considering all the
towing ordinance changes A-Jacks and his attorney required the
Township to make, the Council must in good faith not allow
A-Jacks to remain on the tow list as he now does not meet all
Township towing requirements."  Id.  Defendants argue that the
Council's adoption of many of Simmermon's recommendations negates
any inference of retaliatory animus, and that in any case the
Council and Construction Office were merely enforcing the letter
of the law against Simmermon.

Defendants have moved for summary judgment, contending that
Plaintiffs' evidence of retaliatory animus is insufficient; that
Plaintiffs fail to prove Equal Protection or Due Process
violations; that Plaintiffs therefore cannot pursue municipal
liability; that Defendants are protected by legislative and
qualified immunity; and that Plaintiffs cannot seek punitive
damages.

III. DISCUSSION

A.  Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law. Id. Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment. Id.

Summary judgment will not be denied based on mere
allegations or denials in the pleadings; instead, some evidence
must be produced to support a material fact. Fed. R. Civ. P.
56(c)(1)(A); United States v. Premises Known as 717 S. Woodward
Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993). The
nonmoving party must "do more than simply show that there is some
metaphysical doubt as to the material facts." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). However,
the Court will view any evidence in favor of the nonmoving party
and extend any reasonable favorable inferences to be drawn from
that evidence to that party. Hunt v. Cromartie, 526 U.S. 541,
552 (1999). See also Scott v. Harris, 550 U.S. 372, 378 (2007)
(The district court must "view the facts and draw reasonable
inferences in the light most favorable to the party opposing the
summary judgment motion.").

### B.  First Amendment Retaliation

Even otherwise legitimate and constitutional government acts are unconstitutional if they are undertaken in retaliation for free speech activities.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  To prove retaliation, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Plaintiffs contend that they need only show that the retaliatory animus was a "motivating factor" behind the adverse action, and that once they show this, the burden shifts to Defendants to prove that they would have taken the action anyway.  See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (relying on San Filippo to describe burdens in retaliatory discharge claim); San Filippo v. Bongiovanni, 30 F.3d 424, 430 (3d Cir. 1994) (describing burdens in retaliatory discharge claim).  Defendants do not contest Plaintiffs' statement of the standard.[4]

---

[4]  Because the issue is not in dispute, the Court need not resolve the question of whether this is the proper standard for First Amendment retaliation in this context.  The Court notes, however, that it is an open question whether the cited decisions still represent good law even in the retaliatory discharge context in light of the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 234, at 2350

Conceding that Simmermon's advocacy was protected speech, Defendants' contention is that the pole barn was in ongoing violation of the zoning ordinance until the conditions for the variance were met, and that the plain text of the amended towing ordinance made A-Jacks ineligible as a consequence.  Therefore, they reason, since the letter of both the zoning and towing law required the actions in question, no discretionary action was taken, much less a retaliatory one.

Plaintiffs' position is that Defendants refused to grant A-Jacks meaningful leniency as to the application of the towing ordinance while granting other companies that leniency in retaliation for Simmermon's advocacy of high standards, and that the revival of the zoning issues after five years of permitting Plaintiffs to continue to operate while the matter was being worked out with the zoning board was similarly retaliatory. Thus, they contend, a reasonable jury could find that the decision to differentially grant leniency as to compliance with the towing and zoning ordinances was motivated by retaliatory animus toward Plaintiffs, and Plaintiffs could prevail.

      1.  <u>Tow List Exclusion</u>

        a.  Adverse Action

A reasonable jury could find based on Plaintiffs' evidence that the Council Defendants took an action against Plaintiffs

---

(2009).  Moreover, it is not clear that even the pre-<u>Gross</u> burden-shifting doctrine would have applied to this case, since this case is not an employment claim.

that would deter a person of ordinary firmness from exercising his constitutional rights if it were caused by retaliatory animus regarding Plaintiffs' protected speech.[5]   Contrary to Defendants position that no discretionary act occurred because the Council was simply following the letter of the law, other towing companies were granted leniency or exemption from the towing ordinance in multiple ways, while A-Jacks was not.

For example, companies were allowed to submit late applications despite a clear statutory deadline.  As of November 1, 2007, more than half of the wreckers had not submitted complete applications, and the Towing Ordinance provides that "If an application is deemed insufficient by the submission date of November 1st, the application shall not be considered for the upcoming year."  Pls.' Supp. Statement of Facts ¶ 133; Defs.' Response to Pls.' Supp. Statement of Facts ¶ 133; § 262-3.

Also, companies that failed the first round of inspections were allowed to be re-inspected after November 1.  Pace Dep. 108-109.  Councilman Julio asked that the failed applicants be given

---

[5]   As often happens in cases in which many individual defendants are sued and referred to collectively in the pleadings and motions, the parties have not been careful to identify the offending conduct as to each individual defendant.  Plaintiffs' Supplemental statement of Material Facts reveals no facts suggesting, and Plaintiff have not crafted any theory for how Gabbianelli or DePalma, who were not members of the Council, caused the members of the Council to extend leniency to other towers while denying it to A-Jacks, and so these individuals will be granted summary judgment at least as to this aspect of the claim.

more time to attempt to pass inspection again.  Pls.' Ex. 34
(Pace Nov. 15, 2007 letter).  On November 14, seven companies
that volunteered readiness for the re-inspection passed, and two,
B&H Auto and Monroe Auto, still were not prepared to pass
inspection.  As of November 30, five applicants were not in
compliance with the new ordinance because they did not have
separate fenced impound yards.  Pls.' Ex. 36.[6]  Again, these
companies were given a sufficient period to bring themselves into
compliance.  Id.

One applicant, the owner of Lake Avenue, wrote to explain
that he could not ever comply with the requirement for a fenced
yard, Pls.' Ex. 37, and Lake Avenue was added to the tow list
anyway.  Ultimately, two companies were "grandfathered" into the
tow list, because even though they did not meet the ordinance's
requirements, the Council decided that they had been around long
enough that they did not have to comply.  Sebastian Dep. at
86-89, 121-22.

Despite the substantial leniency provided to the companies
even though there was no statutory authority for modifying the
statements of general applicability, and despite the ultimate
exempting of two companies from the code's requirements entirely,
A-Jacks was held to the requirements of the Code and removed from

_____

[6]  The five companies were A&A, Clarks, Lake Avenue, Malie,
and Monroe Auto Body.  Pls.' Ex. 36.

the tow list as a consequence, without explanation for the
difference in treatment.[7]  The provision of exemptions for some
companies and not others is a discretionary act, and it is
undisputed that it significantly adversely affected Plaintiffs.

### b.  Causation

In order to prove a retaliation claim, Plaintiffs must prove
that the adverse action was at least motivated by, if not the
but-for causal result of, the protected speech.  A connection
between the protected activity and the adverse action can be
established using many different kinds of evidence, including but
not limited to, the temporal proximity of the two,
the adequacy of any explanation for the adverse action, other
antagonism, and direct evidence of retaliatory animus.  Ivan v.
County of Middlesex, 595 F. Supp. 2d 425, 468 (D.N.J. 2009).
Although the lawyer's instinct for categorization has sometimes
encouraged compartmentalization of the causation inquiry, the
appropriate approach is to examine all of the evidence that is
potentially relevant to causation to determine whether the
totality is sufficient for a reasonable jury to find causation.
See Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173 (3d Cir.
1997)("These are not the exclusive ways to show causation, as the

---

[7] While the Council did allow A-Jacks two weeks to bring
itself into compliance, it is undisputed that the Council was
aware that this amount of time would be insufficient.

proffered evidence, looked at as a whole, may suffice to raise the inference.").

Defendants contend that the refusal to grant leniency to A-Jacks could not have been in retaliation for Simmermon's advocacy because the information Simmermon supplied was largely used in the new ordinance, which benefitted Simmermon.  Defs.' Br. 9. But whether the Council adopted Simmermon's suggestions or not is irrelevant to whether Simmermon's advocacy displeased the Council, as Defendants seem to acknowledge.  The Council's adoption of the standards is not inconsistent with one or more councilmembers being angry at Simmermon for having raised the issue.  And more importantly, improper retaliation need not flow from anger.  If A-Jacks was held to a higher standard than other towing companies because Simmermon had advocated for higher standards, as Eleanor Gill seemed to suggest would be the just course in her November 2007 letter, this too would qualify as unconstitutional retaliation as it would be an adverse action motivated by an act of protected speech.  Such an action would just as surely and recklessly deter protected speech as retaliation born out of vengeance; those who wish to advocate tougher standards should not be made to fear being singled out for harsher treatment.

Defendants make no other specific arguments on causation, but do generally assert a lack of evidence as to causation.

16

While Plaintiffs' evidence is less than compelling, it is not so lacking that the mere assertion of lack of evidence is sufficient to persuade this Court to grant Defendants summary judgment. What Plaintiffs present is a great deal of weak circumstantial evidence and one quite strong piece of circumstantial evidence: the unexplained disparate treatment of Plaintiff.  This is sufficient for a reasonable jury to find for Plaintiffs.

The relatively weak circumstantial evidence includes evidence of Councilmen Julio and Caligiuri's antagonism toward Simmermon.  For unclear reasons, Councilman Julio had an open feud with Plaintiffs' attorney, Luby.  At the June 2007 meeting, Luby said he had heard that members of the Council felt that Simmermon would be more favorably looked upon if Luby was not his attorney.  Pls.' Supp. Statement of Facts ¶ 77-79; Defs.' Resp. to Supp. Statement ¶ 77-79.  Luby raised the issue again in October 2007, asking if Council or any appointed officials made that statement or heard it.  Gabbianelli said he thought it (but never said it), and Councilman Julio said he took "the Fifth." Id.  Luby addressed an expletive to Councilman Julio and a confrontation erupted in which the Mayor cursed at Luby.  After the confrontation with the Mayor, Luby walked out of the meeting. Councilman Julio followed Luby out and yelled at him.  Councilman Julio had to be physically restrained from getting to Mr. Luby. Id.  It is not clear that this incident should be seen as Julio's

17

hostility based on Luby's advocacy as Simmermon's agent, but it is tied closely enough to Simmermon's advocacy, occuring during Simmermon's advocacy and directed toward the agent of Simmermon's advocacy, that it is not outside the bounds of reasonableness to conclude that this suggests some hostility toward Simmermon based on the advocacy.

Similarly, Plaintiffs point to an incident in which Council President Caligiuri arguably displayed some anger toward Simmermon out of proportion to the immediate context. According to Simmermon, in early July 2007, A-Jacks towed a vehicle and its driver, who was not the registered owner of the vehicle and who refused to pay the towing and storage fees, wanted access to the A-Jacks yard to remove equipment attached to the vehicle. Simmermon Decl. ¶ 13. Caligiuri spoke with Simmermon about removing the property, and Simmermon told Caligiuri he would contact his attorney and get back to him. Id. According to Simmermon, he did not return the call because he thought the matter had been resolved. Id. Caligiuri apparently took offense, saying that Simmermon's conduct was unacceptable, and using the incident to justify changes to the ordinance to prevent Simmermon from having a monopoly over the Township's heavy duty towing requirements. Ex. 29 at 7 (minutes). As with the evidence with respect to Julio, the inference to be drawn here that Caligiuri had some hostility toward Simmermon based on

18

Simmermon's protected speech is within the bounds of reasonableness, but quite weak.

This evidence of antagonism, on its own, would be insufficient in light of the totality of the circumstances for a reasonable jury to find that the Council's action was in retaliation for Simmermon's advocacy. Among other reasons, this evidence is only relevant to two votes out of seven in the unanimous Council decision, and even in the absence of those votes the result would have been the same.[8]

But in this case the jury will be presented with the fact, so far unexplained by Defendants, that the Council treated A-Jacks differently from other towing companies without explanation. Not only were other companies granted leniency or even outright exemption from the ordinance, but the Council also evidently decided to consider A-Jacks state of compliance with zoning approvals without investigating whether the other towing

---

[8] The issue of how to analyze the action of the Council, a body composed of seven members, is not addressed by the parties on this motion, and therefore the Court will not consider it. It is not obvious whether and to what extent a showing of antagonism on the part of some of the members bears on the question of the other members' retaliatory animus. But the parties will need to stake out positions on that issue, as well as the broader questions of causation raised by analysis of the action of a multi-member body, before the Court resolves these questions. It is sufficient for today's motion to observe that disparate treatment in this kind of temporal and topical proximity to the protected speech gives rise to an inference of retaliation, and that this inference is enhanced by Defendants' failure to offer any explanation for the conduct.

companies had similar problems.  Pls.' Supp. Statement of Facts ¶
105; Defs.' Response to Pls.' Supp. Statement ¶ 105.[9]  The
absence of any explanation for the differential treatment both at
the time and in this motion, combined with the other
circumstances including the antagonism of two council members and
the close topical and temporal proximity between the protected
speech and the adverse action, a reasonable jury could infer that
the reason A-Jacks was treated differently was retaliatory animus
or the reason set forth in Eleanor Gill's letter: that since A-
Jacks had advocated for higher standards, A-Jacks should be held
strictly to those standards.

Defendants simply deny that discretion was applied in the
application of the statute, offering no explanation for the facts
suggesting disparate treatment.  Defendants' failure to offer a
competing explanation for the differential treatment tips the

---

[9]  Plaintiffs take this a step further and argue that the
Council was aware of other towers' zoning violations and ignored
them, but that contention is not supported by the record
evidence.  The purported violation on the part of B&H involves an
addition of a bay to B&H's pole barn without a permit.  But
Plaintiffs' contention that the change would have required a
permit is not supported in the record.  Zoning Officer Fred
Weikel testified in his deposition that a theoretical "addition"
(not referring to this particular addition) would have to receive
zoning approval, Dep. 75, but Weikel also testified that some
internal changes to a facility do not require approvals.  Dep.
65.  The record contains no evidence as to whether the addition
of a bay to a pole barn needed zoning approval.  And Plaintiffs'
contention that Midway lacked a Certificate of Occupancy is not
supported in the record as set forth in Plaintiffs' Supplemental
Statement of Material Facts.

scales sufficiently in favor of finding retaliation to at least permit Plaintiffs to take their case to a jury.  Cf. Marra v. Philadelphia Housing Authority, 497 F.3d 286, 306 (3d Cir. 2007) (noting that the jury is to examine the strength of the defendant's competing explanation).  Taken together, this evidence of causation is sufficient for a reasonable fact-finder to determine on a preponderence of the evidence standard that the Council's disparate treatment of A-Jacks was retaliatory. Defendants' motion as to Plaintiffs' First Amendment claim of retaliatory removal of A-Jacks from the tow list will be denied.

2.   <u>Zoning Enforcement</u>

The decision to investigate and prosecute violations of the zoning law is discretionary, and if taken for retaliatory reasons can constitute the kind of adverse action necessary for a finding a violation of the First Amendment.  The critical piece of evidence present with respect to Plaintiffs' claim about the tow list, evidence of disparate treatment, is absent here; there is no evidence that Construction Officer DePalma was alerted to other companies' zoning violations and ignored them.  On the other hand, there were irregularities in the enforcement procedure, and there is direct evidence of the Mayor's antagonism and his direction of the enforcement action.

Plaintiffs contend that DePalma's retaliatory motivation is shown by the procedural impropriety of his course of conduct. The strongest proof of procedural impropriety is the fact that DePalma proceeded to shut down the pole barn despite Simmermon having followed the Township's process for challenging the deprivation before it occurred: requesting a hearing before the Construction Board of Appeals within 15 days of the notice. Defs.' Ex. S; Defs.' Ex. T.  The Township contends that post-deprivation relief was the normal procedure, and therefore there was no procedural impropriety, but as explained later in this Opinion, that position is incorrect as a matter of New Jersey law.

The timing of the actions is also suggestive of improper motivation.  The Township permitted A-Jacks to operate out of the pole barn for five years, then suddenly after Simmermon's advocacy and the addition of the zoning compliance requirement, the Township began to prosecute the zoning violations against A-Jacks.  A reasonable jury might determine that the suspect timing was the result of other citizens complaining about the violations for the first time (i.e., Eleanor Gill's complaints), but that's not the only plausible inference.  On this posture, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that

22

evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

Finally there is the evidence Mayor Gabbianelli's animus. At least some of the evidence suggest the Mayor directed the enforcement action.  Teefy Dep. 71-72.  And the Mayor had a close relationship to the towing companies upset by Simmermon's advocacy, had an open conflict with the attorney representing Simmermon at the meetings where this advocacy occurred, and later admitted that he was angry at Simmermon (for unspecified reasons).  Gabbianelli Dep. 161.  Plaintiffs have failed to clearly explain their position with respect to the importance of Gabbianelli's retaliatory animus to DePalma's conduct.  But so have Defendants, whose burden it is to show that Gabbianelli and DePalma are entitled to summary judgment.  To resolve this motion, it is therefore sufficient to observe that the facts which a reasonable jury could find based on the evidence presented here leave open the possibility of various agency relationships other than mere respondeat superior that would leave both Gabbianelli and DePalma liable.[10]  Defendants' motion

---

[10]  If, as some of the evidence suggests, Gabbianelli directly ordered DePalma's conduct for retaliatory reasons, then certainly Gabbianelli could be liable just as surely as if he had taken the actions personally.  And there are circumstances under which DePalma can be held liable even if DePalma lacked retaliatory animus, if DePalma knew of the motive for Gabbianelli's order; this is another matter left unaddressed by the parties.

will therefore be denied as to Plaintiffs' First Amendment claim of retaliatory zoning enforcement.

### C.  Equal Protection

Plaintiffs contend that the facts adduced with respect to the retaliation claim also make out a claim for a violation of the Equal Protection Clause even if retaliatory animus was not the motivation behind the conduct.  To proceed on such a claim, the plaintiff must allege that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The critical difference between this Equal Protection claim and a First Amendment claim for retaliation is that a claim for retaliation can have merit even if there exist rational justifications for the action, so long as the retaliation was the actual cause; conversely, for Equal Protection purposes, the inquiry is into the conceivable basis for the action.

To prove a lack of rational basis, Plaintiffs must negate every conceivable rational basis for their differential treatment.  See Board of Trustees v. Garrett, 531 U.S. 356, 367 (2001) ("[T]he burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification."); Ramsgate Court Townhome

Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir.
2002).[11]  This "no conceivable basis" implementation of Equal
Protection Clause review, eschewing the necessity of evidence or
an explanation on the part of the State actor and placing the
burden on the plaintiff to negate all conceivable reasons
rationally related to a legitimate government purpose, has been
uniformly applied to class-of-one equal protection actions
regardless of the state actor.  See Garrett, 531 U.S. at 367;
Highway Materials, Inc. v. Whitemarsh Tp., No. 04-4195, 2010 WL
2680996, at *6-7 (3d Cir. 2010) (applying "no conceivable basis"
test to actions of township in class-of-one claim); Lauth v.
McCollum, 424 F.3d 631 (7th Cir. 2005) (applying "no conceivable
basis" test to police chief who asked a Board of Police
Commissioners to sanction the plaintiff for misfeasance).  The
presence of subjective ill will does not satisfy the need to
negate conceivable rational bases.  See Jicarilla Apache Nation
v. Rio Arriba County, 440 F.3d 1202, 1209 (10th Cir. 2006).

---

[11]  See also Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 75
(2001) (noting that for Equal Protection purposes it is
"constitutionally irrelevant what reasoning in fact underlay" the
decision in question, so long as it is supported by a rational
basis) (internal quotation omitted); Heller v. Doe, 509 U.S. 312,
319 (1993) ("A State, moreover, has no obligation to produce
evidence to sustain the rationality of a statutory
classification."); Federal Communications Comm'n v. Beach
Communications, Inc., 508 U.S. 307, 315 (1993) ("[A] legislative
choice is not subject to courtroom factfinding and may be based
on rational speculation unsupported by evidence or empirical
data.").

The differential treatment that A-Jacks received at the hands of the Township Council survives rational basis review, because even assuming A-Jacks was similarly-situated, Plaintiffs have not negated every conceivable basis for enforcing the towing ordinance requirements against A-Jacks.  Rational basis review "gives government decisionmakers wide latitude when creating policy exemptions to an existing law." Haves v. City of Miami, 52 F.3d 918, 922 (11th Cir. 1995) (citing Nordlinger v. Hahn, 505 U.S. 1, 17 (1992)).  One such conceivable rational basis is that while the other towing companies were in compliance with the law prior to the new requirements put in place by the 2007 amendment to the towing ordinance, A-Jacks was not, since it had an ongoing violation of the zoning laws which it had not yet remedied. Indeed, A-Jacks business operated in violation of the zoning laws for the entire time since it began operating in the pole barn in 2002.  The Township could therefore rationally provide more leniency with respect to those companies than to A-Jacks.

Similarly, there is no evidence that the decision to enforce the zoning laws against Simmermon was so lacking in any conceivable rational basis as to violate the Equal Protection Clause.  Assuming for the sake of argument that there were similarly-situated entities whose known zoning violations were not enforced (even though that fact is not clear from the record), Simmermon could have been rationally singled out based

26

on the fact that citizens were complaining about him, or based on the longstanding nature of the violations, or a combination of the two.

Defendants will therefore be granted summary judgment as to Plaintiffs' Equal Protection Claim.

### D.  Due Process

Plaintiffs contend that they were denied pre-deprivation due process of the law before the November 26 order of penalty, the November 28 notice of unsafe structure, and December 13 enforcement of that notice.  Procedural due process requires notice and an opportunity to be heard before a person is deprived of a protected interest, except for "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570 n. 7 (1972); see also Alvin v. Suzuki, 227 F.3d 107, 120 (3d Cir. 2000) ("[I]f the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures.").

There was no due process violation with respect to the November 26 order of penalty and the November 28 notice of unsafe structure, because there was no deprivation of a protected interest until December 13.  Plaintiffs make a handful of

arguments for why the earlier notices constituting due process violations, none of which is correct. Plaintiffs erroneously assert that the document did not provide notice that the property would be vacated. It did. See Defs.' Ex. T. They also contend that DePalma acted contrary to the regulations by issuing notices without first inspecting the property, and that DePalma misrepresented this fact on the notices. But the Code provides that a structure may be deemed unsafe because of its use without a certificate of occupancy. N.J. Admin. Code 5:23-2.32(a) ("All buildings or structures . . . that by reason of illegal or improper use or occupancy shall be deemed unsafe buildings or structures, shall be taken down and removed or made safe and secure."). And although the notice of violations refers to an "inspection conducted by this agency on 11/28/07 on the above property," the quoted language appears to be form language. Defs.' Ex. S; Defs.' Ex. T. The appearance of this form language on the notice does not seem to present a due process issue. Fundamentally, there is no due process problem with these notices because all that occurred on those dates was the issuance of notices that Plaintiffs would be deprived of their property at some future date because of the failure to obtain a certificate of occupancy, and that if they wished to contest this future deprivation they would need to "request a hearing before the

28

Construction Board of Appeals" within 15 days.  Defs.' Ex. S; Defs.' Ex. T.

However, Simmermon duly filed a request for the Construction Board of Appeals hearing and before he had an opportunity to be heard, on December 13, the Township through DePalma took the threatened enforcement actions anyway.  Defendants appear to concede that as a result of the timing Plaintiff received only post-deprivation process, and in any case, the Court agrees. Simmermon pursued the exact process required in the notices, but before he had an opportunity to be heard thereunder, Plaintiffs were deprived of their property.  The only question is therefore whether post-deprivation process was sufficient.

New Jersey law has a set of parallel procedures for emergency and non-emergency enforcement of construction laws, and the non-emergency track was followed here.  Emergency measures are justified "[i]f upon an inspection of a building, structure or premises the enforcing agency discovers a violation of this act that constitutes an imminent hazard to the health, safety or welfare of the occupants or intended occupants, fire fighters, or the public generally."  N.J. Stat. Ann. § 52:27D-208.  In this case, there was no inspection and discovery of any imminent hazard, there was only an administrative review of permits and the per se unsafe condition resulting from a lack of certificate of occupancy pursuant to N.J. Admin. Code 5:23-2.32(a).

29

Emergency measures are provided for in N.J. Admin Code. § 5:23-2:32(b), and were not invoked or taken.  Instead, the Township proceeded under § 5:23-2:32(a).  This is why the notices issued to Plaintiffs provided for application to the Construction Board of Appeals within 15 days under N. J. Admin. Code 5:23A-2.1(a), the procedure for non-emergency action.  See N. J. Admin. Code 5:23A-2.1 (requiring a different set of procedures for emergency actions).

Defendants belatedly try to argue that the lack of toilets in the pole barn constituted a sufficient emergency.  Even if a lack of toilets in the pole barn were a sufficiently emergent condition to justify post-deprivation process, a dubious contention asserted but entirely unsupported by Defendants, the Township makes no mention of the toilets in its notices.  See Defs.' Ex. S & T.  Defendants' post hoc assertions notwithstanding, none of the record evidence suggests that DePalma or Gabbianelli regarded the situation at the pole barn to be an emergency.

In short, there is no evidence that an emergent situation is why the Township vacated the pole barn.  The Court need not even reach the question of whether the Township officials' assessment of the situation as an emergency was "arbitrary or amounts to an abuse of discretion," since it would appear that no Township official thought it was an emergency, nor did they have "competent evidence" to support such a belief.  Elsemere Park

Club v. Town of Elsemere, 542 F. 3d 412, 418 (3d Cir. 2008).  In
the absence of such an emergency or other justification for
taking action before Simmermon had the opportunity to be heard, a
reasonable jury could find that Plaintiffs' due process rights
were violated.  Defendants' motion on Plaintiffs' due process
claims will therefore be granted in part dismissing Plaintiffs'
claims as to the November 26 and 28 order and notice, and it will
be denied as to Plaintiffs' claim of deprivation of property
without a hearing on December 13.

### E.  Legislative Immunity

Defendants contend that they are immune from Plaintiffs'
claims based on changes to the towing ordinance because of
legislative immunity.  See Bogan v. Scott-Harris, 523 U.S. 44, 49
(1998) (holding that municipal officials are immune from § 1983
suits against them in their individual capacities for their
legislative activities); Fowler-Nash v. Democratic Caucus of Pa.
House of Representatives, 469 F.3d 328, 332 (3d Cir. 2006)
(holding that legislative immunity insulates legislators from
suits based on legislative acts).[12]  However, Plaintiffs
explicitly disavow any claims arising from the amendment of the

---

[12]  The doctrine would not forbid Plaintiffs' official
capacity claims, as these are claims against the municipality
itself, an entity not protected by legislative immunity.  See
Owen v. City of Independence, Mo., 445 U.S. 622, 638 (1980).

2007 code.  Pls.' Sur-reply 4.[13]  They rest their claims
exclusively on the December 11, 2007 decision to exclude A-Jacks
from the 2008 tow list and the enforcement actions of November
20, 2007, through July 18, 2008.  At most, they rely on the
adverse aspects of the 2007 amendment as circumstantial proof of
animus.

   Defendants do not contend that the exclusion of A-Jacks from
the 2008 list or the enforcement actions constitute legislative
acts, and they do not.  A legislative act is one that is both
substantively legislative, "which requires that it involve a
policy-making or line-drawing decision" and procedurally
legislative, which requires "that it be undertaken through
established legislative procedures." Acierno v. Cloutier, 40 F.3d
597, 610 (3d Cir. 1994).  Though not dispositive, one helpful
factor is that decisions affecting a single individual or a small
number of people generally do not implicate legislative power.
Id.  The compiling of the tow list was an action taken pursuant
to the existing ordinance.  § 262-3.  The procedure used to
compile the list is similar to the procedure involved in crafting
and passing legislation, but it was not a substantively
legislative act because it did not create, alter, or affect any

---

   [13]  To the extent this explicit disavowal is in tension with
some of the pleading and arguments made by Plaintiffs elsewhere,
the Court takes the explicit disavowal at face value and
disregards the inconsistent arguments.

legislation, much less legislation that involved "a policy-making or line-drawing decision."  It was an administrative act to create an administrative document given force of law by existing legislation.  This act involved the Council "merely enforcing existing policy," which is not a legislative act.  Fowler-Nash, 469 F.3d at 338.  The zoning enforcement actions of November 20, 2007 through July 18, 2008 were not legislative acts for the same reasons.

### F.  Qualified Immunity and Punitive Damages

Qualified immunity protects a government official who "made a reasonable mistake about the legal constraints" on his or her actions.  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).  A mistake is not reasonable when it amounts to the violation of a "clearly established" right, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Curley, 499 F.3d at 207 (internal quotations and citations omitted).  Relatedly, punitive damages may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (internal quotations omitted).  Punitive damages can be awarded "in a civil

rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages." Id. at 430.[14]

The question is whether a jury finding liability on the due process and First Amendment claims could also find as to each Defendant that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," and that the conduct was "motivated by evil motive or intent" or "involve[d] reckless or callous indifference to the federally protected rights of others." Curley, 499 F.3d at 207; Alexander, 208 F.3d at 431. The Court combines these inquiries because a jury could find a lack of qualified immunity and impose punitive damages for essentially the same reasons.

As to the First Amendment claim, the nature of the retaliation claim in this case requires the defendants to have been motivated to treat Plaintiffs differently because of the exercise of a constitutional right. The same facts permitting a reasonable jury to find improper motivation sufficient to prove liability are necessarily sufficient for a reasonable jury to strip qualified immunity and apply punitive damages, at least when as here the Defendants concede that the constitutional right involved is obvious and clearly established. The law applied in

---

[14] Defendants initially incorrectly contended that a New Jersey statute on punitive damages would limit that relief in this § 1983 action. It would not, as they later conceded.

the First Amendment retaliation context is uncontroversial and undisputed; what is disputed in this case is the facts. Defendants do not assert that a reasonable official would not have been aware that it was unconstitutional to treat someone adversely because of the exercise of their protected speech. Therefore, both Defendants' liability for this claim and their entitlement to qualified immunity and exposure to punitive damages rise or fall on the factual findings about the Defendants' motivations.[15]

For similar reasons, Defendants are not entitled to summary judgment on qualified immunity or punitive damages with respect to the due process claim.  Defendants concede that the due process rights in question are clearly established, and rest their argument for qualified immunity on the assertion that while the rights are clear, it was not clear to Defendants that their actions violated those rights.  But it is undisputed that Defendants were aware that they were depriving Plaintiffs of property before the requested hearing had occurred.  Therefore, the only question is an objective one: whether it would be clear to a reasonable officer that pre-hearing deprivation was unconstitutional in the absence of an emergency.  Since Defendants concede this to be clearly established, there is no

---

[15]  Plaintiffs did not seek punitive damages against the Township, and such damages are unavailable.  See City of Newport v. Fact Concerts, 453 U.S. 247, 267-271 (1991).

basis for qualified immunity.  And while it is conceptually
possible to succeed on this kind of due process claim without a
showing of the recklessness toward constitutional rights
necessary for punitive damages, a reasonable jury could find such
intent for the reasons described regarding the retaliatory motive
behind the enforcement actions; namely, that Gabbianelli ordered
the actions that violated Plaintiffs' due process rights out of
animus toward Simmermon.

### G.  Municipal Liability

Defendants somewhat redundantly contend that "If plaintiff
cannot prevail on his claims of specific constitutional
violations, which defendants respectfully suggest he cannot,
there is no basis for his claim that Monroe Township can be
subjected to liability under § 1983." Defs.' Br. 33.  This is
true.  But since Plaintiffs can prevail, the point is moot except
as to the Equal Protection claim for which the Township will be
granted summary judgment alongside the individual Defendants.  If
there are other reasons that municipal liability is unavailable
to Plaintiffs, Defendants do not raise them in this motion.

### IV.  CONCLUSION

Defendants correctly argue that Plaintiffs' Equal Protection
claim is without merit, as Plaintiffs fail to negate the

conceivable rational bases for Defendants' actions.  Gabbianelli
and DePalma are also entitled to summary judgment with respect to
the claim of retaliatory exclusion of A-Jacks from the towing
list, because there is no evidence that they directed or caused
that action.  And Defendants are entitled to summary judgment as
to that part of the due process claim based on impropriety with
respect to the issuance of the November notices of violation, as
they did not constitute deprivations of liberty or property.
However, Defendants are not entitled to summary judgment with
respect to the remaining claims.  The accompanying Order will be
entered.  The remaining claims will be scheduled for trial.


**March 28, 2012**                            **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge

37